IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TULLY SANEM, and CRYSTAL ZIER, aggressive co-plaintiff,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>ECONOMIC SECURITY SERVICE BRANCH MANAGER, LAURA SMITH (ACTING) individual capacity; CSED ADMINISTRATOR CHAD DEXTER individual capacity; INVESTIGATOR/DESIGNEE CORY OLSON individual capacity; and DPHHS DEPARTMENT DIRECTOR SHEILA HOGAN, official capacity,<br><br>　　　　　Defendants. | CV 19-6-M-DLC-KLD<br><br><br><br>FINDINGS & RECOMMENDATION |

Pro se Plaintiff Tully Sanem brings this action alleging federal constitutional claims under 42 U.S.C. § 1983 and pendent state constitutional claims against Defendants for enforcing his child support obligations. Defendants move for summary judgment on all claims set forth in the Amended Complaint, and Sanem cross-moves for partial summary judgment on two claims. For the reasons set forth

1

below, Defendants' summary judgment motion should be granted, Sanem's cross-motion for partial summary judgment should be denied, and this matter should be dismissed.

## I.     <u>Background</u>

Two state district courts in Iowa have previously issued orders establishing Sanem's paternity and obligation to pay child support for two of his children. (Docs. 57-3, 57-6, 57-7, 57-13, 57-14). In November 2000, the Iowa District Court for Sioux County entered an order establishing Sanem's paternity for J.A. and ordering him to pay child support in the amount of $268.00 per month. (Doc. 57-3). Sanem's monthly child support obligation for J.A. was later modified to $50.00 and $266.00 by Iowa court orders issued in April 2005 and May 2008. (Docs. 57-5, 57-6, 57-7). In September 2005, the Iowa District Court for Plymouth County entered an order establishing Sanem's paternity for a second child, B.C., and ordering him to pay $2,387 in accrued child support. (Doc. 57-13). In October 2009, the Iowa court issued an order modifying Sanem's obligation for B.C. to $145.00 per month. (Doc. 57-14).

In late 2009, the Montana Child Support Enforcement Division ("CSED") received child support enforcement referrals from the State of Iowa. (Docs. 57-9, 57-12). After receiving these interstate referrals from the State of Iowa, CSED

initiated administrative enforcement actions, including income withholding pursuant to Mont. Code Ann. § 40-5-401 et. seq., and license suspension pursuant to Mont. Code Ann. § 40-5-701 et seq.

On November 2, 2010, CSED issued a Notice of Intent to Suspend License pursuant to Mont. Code Ann. § 40-5-702 stating that Sanem owed $22,760.01 in past-due child support. (Doc. 57-17). The Notice advised Sanem that effective 60 days after receiving the Notice, his Montana driver's license would be suspended unless he (1) paid the entire amount due or entered a payment plan approved by CSED or (2) appeared at an administrative hearing and showed cause why suspension of his license was not appropriate. (Doc. 57-17 at 1). The Notice stated that Sanem had 60 days after the date he was served with the Notice within which to request an administrative hearing. (Doc. 57-17 2). The record reflects that Sanem was served with the Notice on February 12, 2011. (Doc. 57-16). On April 19, 2011, after the 60 day period expired, a CSED Administrative Law Judge issued an order suspending Sanem's Montana driver's license and determining that he owed child support in the amount of $22,760.01. (Doc. 57-19 at 2).

On January 17, 2017, CSED issued a Notice of Withholding to Sanem for each of the two cases it was enforcing for the State of Iowa. (Docs. 57-20, 57-21). The first Notice of Withholding alleged that Sanem owed $266.00 per month for

current support and $42,444.01 in unpaid support for J.A. (Doc. 57-20). The

second Notice of Withholding alleged that Sanem owed $173.00 per month for

current support and $16,550.78 in unpaid support for B.C. (Doc. 57-21). CSED

also issued two income withholding orders to Sanem's employer. (Docs. 57-23,

57-24). Pursuant to the terms of those orders, Sanem's employer withheld a total of

$886.97 from his wages for payment of child support during the period between

March 2017 and May 2017. (Doc. 57-25).

On January 7, 2019, Sanem filed this action against CSED, CSED

investigator Cory Olson in his individual capacity, CSED Administrator Chad

Dexter in his individual capacity, and Department of Public Health and Human

Services ("DPHHS") Deputy Director and Economic Security Services Branch

Manager Laura Smith in her individual capacity. (Doc. 1). In June 2019, Sanem

filed an Amended Complaint adding DPHHS Director Sheila Hogan as a defendant

in her official capacity.[1]  (Doc. 42). In Counts 1 through 11, Sanem advances

---

[1] The Amended Complaint also identifies Crystal Zier as an "aggressive co-plaintiff" in the case caption. (Doc. 43 at 1). Zier did not sign the Amended Complaint, however, and because Sanem is a non-attorney proceeding pro se he cannot represent her. See Fed. R. Civ. P. 11 ("Every pleading, written motion, and other paper must be signed … by a party personally if the party is unrepresented."); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 66465 (9th Cir. 2008) (a plaintiff proceeding pro se cannot represent others). Because Zier has not signed the Amended Complaint as required by Rule 11, she is not considered a plaintiff. Even assuming Zier was a plaintiff, however, her claims would fail as a matter of law for

claims under 42 U.S.C. § 1983, alleging that Defendants' conduct in enforcing his child support obligations violated his rights under the Fifth, Ninth, Thirteenth, and Fourteenth Amendments to the United States Constitution.[2]  (Doc. 42 at 9-22). In Count 12, Sanem alleges Defendants violated 42 U.S.C. § 666(a), which requires states to implement certain procedures to improve the effectiveness of child support enforcement, including procedures for income withholding and paternity determinations. (Doc. 42 at 22-23). In Count 13, Sanem claims that Defendants' child support enforcement actions violated the unenumerated rights provision of the Montana Constitution and his right to pursue life's basic necessities under Article 11, Section 3 of the Montana Constitution. (Doc. 43 at 24). Finally, in Count 14, Sanem seeks a "declaratory judgment on all causes of action." (Doc. 43 at 25).

In his prayer for relief, Sanem requests (1) a declaratory judgment stating that Defendants have violated his constitutional rights; (2) injunctive relief prohibiting Hogan, in her official capacity as DPHHS director, from pursuing further collection of child support and requiring her to discharge any arrears; (3)

the reasons set forth below.

[2]  Approximately two months before Sanem filed his Amended Complaint, the Court dismissed claims 1 through 11 as to CSED on the ground that CSED is a state agency and cannot be sued under § 1983. (Doc. 35).

compensatory, special, statutory, punitive, and exemplary damages; (4) restitution; and (5) attorney fees. (Doc. 43 at 27-28).

Defendants move for summary judgment on all claims, and Sanem cross-moves for summary judgment on his second and third claims for relief.

## II.   __Legal Standards__

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477

U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). When presented with cross motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

In general, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir. 1986). This means that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 576 (9th Cir. 1987). Nevertheless, in the summary judgment context, courts are to construe pro se documents liberally and give pro se litigants the benefit of any

doubt. *Erickson v. Pardus* 551 U.S. 89, 94 (2007); *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999).

## III.   <u>Discussion</u>

Although not raised by Defendants, the Court has an independent obligation to address subject matter jurisdiction before addressing their summary judgment motion on the merits. See *Arbaugh v. Y & H. Corp.*, 546 U.S. 500, 514 (2006); *Munoz v. Mabus*, 630 F.3d 856, 860 (9th Cir. 2010). Under the *Rooker-Feldman* doctrine, "federal district courts do not have jurisdiction to hear de facto appeals from state court judgments." *Carmona v. Carmona*, 544 F.3d 988, 995 (9th Cir. 2008). Essentially, the "doctrine bars suits 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Carmona*, 544 F.3d at 995 (quoting *Exxon Mobil Corp., v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005)). *Rooker-Feldman* precludes not only review of decisions by a state's highest court, but also those of its lower courts. See *Dubinka v. Judges of Superior Court*, 23 F.3d 218, 221 (9th Cir. 1994).

An action constitutes a de facto appeal where "claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that

the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003). "A losing party in state court is thus barred from seeking what in substance would be appellate review of a state judgment in federal district court, even if the party contends the state judgment violated his or her federal rights." *Mitrano v. United States*, 2016 WL 7322470 * 2 (D. Mont. Oct. 31, 2016) (holding that under *Rooker-Feldman*, the court lacked subject matter jurisdiction to declare a final New Hampshire state court custody and child support order void as a matter of law).

Where the plaintiff "asserts as a legal wrong an allegedly illegal act or omission by an adverse party," however, *Rooker-Feldman* does not apply. *Carmona*, 544 F.3d at 995 (citing *Noel*, 341 F.3d at 1164). See *Sheppard v. Welch*, 2005 WL 1656873 * 3 (S.D. Ind. July 5, 2005) (holding *Rooker-Feldman* did not apply because the court could determine whether "income withholding orders violated [the plaintiff's] right to due process of law without altering or extinguishing his obligation to pay child support").

Sanem does not ask this Court to declare the final Iowa state court child support orders void as a matter of law. But as part of his prayer for relief, Sanem asks the Court to issue an injunction requiring Defendant Sheila Hogan, who is

sued in her official capacity as DPHHS Director, to "cease and desist from present collections" of child support. (Doc. 43 at 27-28). Sanem also requests that the Court "void or discharge arrears" and order "restitution of financial losses." (Doc. 43 at 28). To the extent granting this relief would undercut and effectively void the Iowa state court orders directing Sanem to pay child support, Sanem's request amounts to a de facto appeal and is barred by *Rooker-Feldman*. See *Mellema v. Washoe County District Attorney,* 2012 WL 5289345 * 2 (E.D. Cal. Oct. 23, 2012) (concluding that to the extent plaintiff was asking the court to "cancel" a family court order and child support owed, his request "amount[ed] to a forbidden de facto appeal of the state court's order directing plaintiff to pay child support" and was barred by the *Rooker-Feldman* doctrine).

For the most part, however, *Rooker-Feldman* does not apply because Sanem's claims are primarily premised on the allegedly wrongful child support enforcement actions taken by Defendants. Sanem's Section 1983 claims allege that Defendants violated his constitutional rights by issuing income withholding orders, collecting six income withholding payments, and suspending his Montana driver's license.

**A.      Section 1983 Claims (Counts 1 through 11)**

To prevail on a claim under 42 U.S.C. § 1983, "a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990). Defendants argue they are entitled to summary judgment on Sanem's Section 1983 claims because the undisputed evidence of record demonstrates that the actions taken by CSED and its staff to enforce Sanem's child support obligations were authorized by, and complied with, federal and state law and did not violate Sanem's right to due process or any other constitutional right.

      1.   Involuntary Servitude

In Count 1, Sanem alleges that Defendants' "automatically imposed practice to set IV-D franchise orders and liens against a man/woman while using the 'operation of law" and "do diligent protocol' excuses to create involuntary service to the program" constitutes involuntary servitude in violation of the Thirteenth Amendment. (Doc. 43, ¶ 27). Sanem further alleges that by enforcing "a program of involuntary" servitude, Defendants deprived him of "a meaningful and positive life interest secured in the 14th Amendment." (Doc. 43, ¶ 28).

The Thirteenth Amendment provides that '[n]either slavery nor involuntary servitude, except as a punishment for crime… shall exist within the United

States….." U.S. Const. Amend. XIII, § 1. Courts in the Ninth Circuit have rejected the argument that being required to make child support payments violates the Thirteenth Amendment's prohibition against involuntary servitude. See e.g. *Cowan v. Brown*, 2014 WL 662221146 *4 (S.D. Cal. Nov. 20, 2014). The Ninth Circuit has held that the enforcement of child support obligations is constitutionally permissible and does not violate the Thirteenth Amendment. *United States v. Ballek*, 170 F.3d 871, 874 (9th Cir. 1999). Because Sanem cannot show that the enforcement of his child support obligations violated the Thirteenth Amendment, Defendants are entitled to summary judgment on Count 1.

2.    Income Withholding

In Counts 2 and 3, Sanem alleges the income withholding orders sent to his employer by Cory Olson and authorized by Chad Dexter and Laura Smith violated his due process rights under the Fifth and Fourteenth Amendments. (Doc. 43, at 11-14). Relatedly, in Counts 4 through 9, Sanem alleges the collection of six income withholding payments, totaling $886.97, between March 2017 and May 2017 also violated his right to due process. (Doc. 43, at 15-19).

The due process clause of the Fifth Amendment provides that no one shall "be deprived of life, liberty, property without due process of law." U.S. Const. Amend. V. "[T]he Fifth Amendment's due process clause only applies to the

federal government." *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).

Because there are no federal defendants and Sanem's Section 1983 claims

necessarily allege action taken under color of state law, the due process protection

of the Fifth Amendment does not apply. But even assuming it did, the analysis is

the same as that for claims brought under the Fourteenth Amendment. See

*Rodriguez v. Cook*, 169 F.3d 1176, 1179 n. 4 (9th Cir. 1999).

The due process clause of the Fourteenth Amendment similarly provides that

no state shall "deprive any person of life, liberty or property, without due process

of law." U.S. Const. Amend. XIV, § 1. This clause provides a basis for both

substantive and procedural due process claims. For purposes of either type of

claim, the threshold consideration is whether the plaintiff has been deprived of a

protected interest in property or liberty. *American Manufacturers Mut. Ins. Co. v.*

*Sullivan*, 526 U.S. 40, 59 (1999). "Only after finding the deprivation of a protected

interest do we look to see if the State's procedures comport with due process."

*American Manufacturers*, 526 U.S. at 59.

Thus, to succeed on a procedural due process claim, "the plaintiff must

establish the existence of '(1) a liberty or property interest protected by the

Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of

process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting

13

*Portman v. County of Santa Clara*, 995 F.3d 898, 904 (9th Cir. 1993)).

Fundamentally, procedural due process requires "some kind of notice" and "some

kind of hearing" before the State can deprive a person of life, liberty, or property.

*Zinermon v. Burch*, 494 U.S. 113, 127-28 (1990).

For purposes of discussing Sanem's due process claims, the Court will

assume that he has a protectible property interest in his wages. See *Alvarez v.

Sonoma County*, 2013 WL 4733822 * 5 (N.D. Cal. Sept. 3, 2013). In support of

their motion for summary judgment, Defendants point to evidence demonstrating

that on January 17, 2017, they issued a Notice of Withholding for each of two

cases CSED was enforcing for the State of Iowa. (Docs. 57-20, 57-21). The notices

advised Sanem that he had the right to object and to request an administrative

hearing. (Docs. 57-20 at 2; 57-21 at 2). There is no evidence that Sanem requested

a hearing. The undisputed evidence establishes that these procedures comported

with Mont. Code Ann. § 40-5-401 et. seq., and satisfied Sanem's due process

rights.

To prevail on a substantive due process claim under Section 1983, a plaintiff

must demonstrate the (1) deprivation of a protected life, liberty, or property

interest; and (2) that the defendant engaged in "conduct that 'shock[s] the

conscience and offend[s] the community's sense of fair play and decency.'"

14

*Regents of the University of Caifornia v. U.S. Department of Homeland Security,*
908 F.3d 476, 514, 518 (9th Cir. 2018).

To the extent Sanem alleges Defendants violated his substantive due process
rights by issuing income withholding orders and collecting six income withholding
payments, he has not come forward with any evidence that these enforcement
actions deprived him of property in such a way that shocks the conscience. To the
contrary, the undisputed evidence demonstrates that Defendants' conduct
comported with federal and state law.

Sanem alleges in his Amended Complaint that the administrative income
withholding orders received by his employer violated 28 U.S.C. § 1691 because
they were not signed by a judge or clerk of court and were not filed in a clerk's
office. (Doc. 43 ¶ 33). 28 U.S.C. § 1691 provides that "[a]ll writs and process
issuing from a court of the United States shall be under the seal of the court and
signed by the clerk thereof." 28 U.S. C. § 1691. This statute relates to the federal
courts and does not apply to the administrative income withholding orders at issue
here.

For these reasons, Sanem's procedural and substantive due process claims
based on the income withholding orders and collection of six income withholding
payments fail as a matter of law.

3. <u>Driver's License Suspension</u>

In Counts 10 and 11, Sanem alleges that in suspending his Montana driver's license for nonpayment of child support, Defendants violated his Fourteenth Amendment due process rights and Art 1 § 10 of the U.S. Constitution, which prohibits a state from passing a law impairing the obligation of contracts.[3] (Doc. 43 at 19-22).

Although these claims are brought against Olson, Dexter, and Smith in their individual capacities, Sanem does not allege any facts or point to any evidence that they were personally involved in the administrative enforcement proceedings that resulted in the suspension of his Montana driver's license. Because there is no evidence that the individual Defendants had any personal involvement in the suspension of Sanem's driver's license, they cannot be held liable under Section 1983. See *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("Liability under § 1983 must be based on the personal involvement of the defendant.")

---

[3] In Count 11, Sanem also alleges a violation of the Ninth Amendment, which provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amend. IX. However, the Ninth Amendment standing alone does not confer substantive rights, which means that Sanem's Section 1983 claims based on the Ninth Amendment necessarily fail as a matter of law. See e.g. *Carbonell v. Count of San Diego*, 2017 WL 5176986 *5 (S.D. Cal. Nov. 7, 2017).

These claims fail for additional reasons as well. Even assuming that Sanem has a protectible property interest in his driver's license, the undisputed evidence demonstrates that he received notice of the enforcement proceedings and was given the opportunity to request a hearing. Sanem was served with the Notice of Intent to Suspend License on February 12, 2011. (Doc. 57-16). The Notice advised Sanem that he had 60 days within which to request an administrative hearing. (Doc. 57-17 at 2). Sanem has not come forward with any evidence suggesting that service was somehow improper, or that he requested an administrative hearing with the 60 day period.

Defendants have presented evidence demonstrating that Sanem's driver's license was suspended in accordance with the procedures set forth in Mont. Code Ann. § 40-5-701 et. seq., thereby satisfying Sanem's right to procedural due process. To the extent Sanem is attempting to bring a substantive due process claim, he does not allege any facts or point to any evidence that the suspension of his driver's license deprived him of property in such a way that shocks the conscience.

Although it is not entirely clear, it appears that Sanem argues in response to Defendants' motion for summary judgment on his Section 1983 claims is that he was not properly served in the Iowa state court proceedings and personal

17

jurisdiction was therefore lacking. (Doc. 63). But Defendants have provided evidence establishing that Sanem was properly served with required documents in the Iowa proceedings establishing his paternity and child support obligations. (Docs. 57-3 at 3 n. 1; 57-11; 57-16; 63-1, 63-2). Even if they had not, Sanem's argument would be foreclosed by *Rooker-Feldman* because it aims to invalidate the Iowa state court's child support orders.

Sanem's argument is also barred by the doctrine of res judicata. When applying res judicata to a state court decision, federal courts "'give the same preclusive effect to [that] judgment as another court of that State would give,' meaning that [federal courts] apply res judicata as adopted by that state." *Adam. Bros. Farming, Inc. v. County of Santa Barbara*, 604 .F.3d 1142, 1148 (9th Cir. 2010) (quoting *Parsons Steel, Inv. v. First Ala. Bank*, 474 U.S. 518, 523 (1986)). Under Iowa law, "[t]he doctrine of res judicata embraces the concepts of claim preclusion and issue preclusion." Claim preclusion bars relitigation of all matters actually determined in the first action and all relevant matters that could have been determined. *Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 398 (Iowa 1998). For claim preclusion to apply, the party against whom preclusion is asserted must have had a "full and fair opportunity" to litigate the claim or issue in the first action. *Arnevik v. University of Minnesota Bd. of Regents*, 24 N.W.2d 315, 319

(Iowa 2002). "To establish claim preclusion a party must show: (1) the parties in the first and second action are the same parties or parties in privity, (2) there was a final judgment on the merits in the first action, and (3) the claim in the second suit could have been fully and fairly adjudicated in the prior case." *Pavone v. Kirke*, 807 N.W.2d 828, 835 (Iowa 2011). These elements are all satisfied here.

Under the Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B, the Iowa child support orders are entitled to full faith and credit. 28 U.S.C. 1738B(a)(1) (stating that each State "shall enforce according to its terms a child support order made consistently with the section by a court of another State). Sanem had could have raised issues regarding service and personal jurisdiction in the Iowa proceedings, and he is precluded by the principles of res judicata from raising those issues here.

### B.    Federal Statutory Claim (Count 12)

In Count 12, Sanem alleges Defendants violated 42 U.S.C. § 666(a), which requires states to implement certain procedures to improve the effectiveness of child support enforcement, including procedures for income withholding and paternity determinations. Sanem alleges these procedures were not followed here, and claims specifically that "DNA paternity has never been established and after being forced to be a part of a system such as this Title IV-D collection, Plaintiff

will refuse to partake in the establishment of such, knowing the liberty it has deprived him of up to this point in time." (Doc. 43, ¶ 79).

To the extent Sanem is attempting to challenge Iowa state court orders establishing paternity, this claim is foreclosed by *Rooker-Feldman* and, alternatively, principles of res judicata. To the extent Sanem is alleging that the enforcement actions taken in Montana somehow failed to comply with the procedures described in this statute, he fails to explain how they violated this statute or present any evidence of a violation. To the contrary, Defendants have come forward with evidence demonstrating that the child support enforcement actions taken against Sanem complied with federal and state law. Accordingly, they are entitled summary judgment on this claim as well.

## C.   State Constitutional Claim and Claim for Declaratory Judgment (Counts 13 and 14)

In Count 13, Sanem claims that Defendants' child support enforcement actions violated the unenumerated rights provision of the Montana Constitution and his right to pursue life's basic necessities under Article 11, Section 3 of the Montana Constitution. (Doc. 43 at 24). In Count 14, Sanem seeks a "declaratory judgment on all causes of action." (Doc. 43 at 25).

Because Defendants are entitled to summary judgment on Sanem's Section 1983 claims for the reasons set forth above, the Court should decline to exercise

jurisdiction over his pendent state constitutional claims and his declaratory judgment claim should be dismissed.

## IV.   <u>Conclusion</u>

For reasons set forth above,

IT IS RECOMMENDED that Defendants' Motion to for Summary Judgment (Doc. 55) be GRANTED, Plaintiff's cross-motion for partial summary judgment (Doc. 58) be DENIED, and this case be DISMISSED and judgment be entered accordingly.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 29th day of January, 2020.

Kathleen L. Desoto
United States Magistrate Judge